### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  CHARLENE MARTINEZ,                )<br>                                                           )<br>          Plaintiff,                                )<br>                                                           )<br> v.                                                      )<br>                                                           )<br> 1.  DETT, INC. d/b/a MCDONALD'S,  )<br>      and                                            )<br> 2.  MARTIN ALVAREZ, an individual, )<br>                                                           )<br>          Defendants.                         )  | CIV-17- 677-W<br><br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

### COMPLAINT

**COMES NOW** the Plaintiff, Charlene Martinez, and for her Complaint against the Defendants alleges and states as follows:

### PARTIES

1. Plaintiff, Charlene Martinez, is an adult Hispanic female who at all times relevant hereto was a resident of Woodward County, Oklahoma.

2. The Defendants are:

 a) DETT, Inc. d/b/a McDonald's, an entity doing business in Woodward County, Oklahoma; and

 b) Martin Alvarez, an adult male who at all times relevant hereto was a resident of Woodward County, Oklahoma.

### JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant DETT, Inc. and is based on claims of: (a) race and national origin discrimination and creation of a hostile work environment in violation of 42 U.S.C. C 1981; (b) interference with and retaliation for use or attempted use of medical leave in violation of the Family Medical Leave Act; (c) negligent hiring, training, supervision and retention in violation of

Oklahoma state law; (d) assault and battery in violation of Oklahoma state law; and (e) intentional infliction of emotional distress.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. The Defendants are located in Woodward County and all acts complained of occurred in or around Woodward County. Woodward County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6. Plaintiff Charlene L. Martinez began her employment with Defendant DETT, Inc. d/b/a McDonald's on or about August 29, 2013 as a Crew Member. Thereafter, she was promoted to Crew Trainer.

7. While employed with Defendant DETT, Plaintiff was subjected to unwanted sexual comments and touching by Defendant Martin Alvarez, Guest Services Manager.

8. Such conduct included but was not limited to Defendant Alvarez telling Plaintiff that "[her] lips would look good on [his] dick." On several occasions, Defendant Alvarez tried to hold Plaintiff's hand at work.

9. Moreover, when Plaintiff notified Defendant DETT that she was pregnant in or around December 2013, Defendant Alvarez made repeated comments that he was the father of the baby. Plaintiff told Defendant Alvarez repeatedly that she was not romantically interested in him and to stop saying that he was the father of her baby. However, Defendant Alvarez's sexual advances continued.

10. In fact, Plaintiff was forced to change her telephone number due to Defendant Alvarez's continued attempts to contact her outside of work.

11. In or around 2014, Plaintiff reported Defendant Alvarez's unwelcome sexual conduct to Manager Nobuku Lawson. Thereafter, Plaintiff was briefly scheduled to work in a separate area from Alvarez. However, she was ultimately assigned to work with Defendant Alvarez in the same area again, resulting in Plaintiff being exposed to continued unwelcome, offensive, severe, and pervasive sexual comments and touching from Alvarez.

12. In or around October 2015, Defendant Alvarez grabbed Plaintiff at work and tried to kiss her. Plaintiff pushed Defendant Alvarez away and told him she was married. She further stated that she did not have romantic feelings for him. And, Plaintiff reported the incident to Manager Kay (last name unknown).

13. Following her complaint to Kay, Plaintiff met with Owner Delbert Gentry and Manager Lawson. Gentry apologized for Defendant Alvarez's actions and told Plaintiff that Alvarez would be fired. However, Defendant Alvarez was not fired and continued to work for Defendant DETT.

14. Following her meeting with Gentry and Lawson, Plaintiff was assigned to work in an area separate from Defendant Alvarez. However, Alvarez continued to find ways to harass Plaintiff. For instance, in or around June 2016, Defendant Alvarez offered Plaintiff $200 in exchange for sex. Plaintiff vehemently declined Alvarez's offer, but this did not stop him from continuing to proposition Plaintiff for sexual factors in exchange for money.

15. On or about June 23, 2016, Plaintiff was scheduled to work with Defendant Alvarez. After asking Defendant Alvarez to put her coffee in the break room, Alvarez (who is a well-known drug user) joked that he put something in Plaintiff's drink. Later in the day, Plaintiff began to feel as though her heart was racing and her movements were twitchy. After

her shift, Plaintiff sent a text to Defendant Alvarez asking if he had actually put something in Plaintiff's coffee.  Via text, Alvarez admitted to Plaintiff that he had spiked her coffee with "Shaboo" (a street term for crystal meth).  Plaintiff immediately went to the hospital and filed a police report related to the incident.  Plaintiff also reported the incident to Lawson and Gentry.

16. On or about June 29, 2016, Plaintiff met with Gentry about the incident. Plaintiff showed Gentry text messages wherein Defendant Alvarez admitted to drugging Plaintiff.  Plaintiff further notified Gentry that she had filed a police report regarding the incident.

17. In response, Gentry told Plaintiff that both she and Alvarez were being removed from their leadership roles and would not be scheduled to work in the same area. Gentry further stated that as a member of the leadership team, Plaintiff was expected to promote peace and harmony in the workplace and going to the police did not promote this goal.  Gentry further discouraged Plaintiff from taking her sexual harassment complaints outside the workplace, although Defendant continually ignored Plaintiff's internal complaints regarding the same.

18. Although Gentry indicated that both Plaintiff and Defendant Alvarez were being demoted, Alvarez continued to be scheduled and work as a manager.  Yet, Plaintiff was no longer scheduled to work overtime hours, although she was typically scheduled to work ten or more overtime hours per week.

19. Plaintiff complained to Lawson about the retaliatory reduction in hours, who stated the reduction in hours was discipline due to Plaintiff's internal and external complaints about Defendant Alvarez.  Plaintiff further told Lawson that Defendant Alvarez was not being punished for his actions and that Plaintiff should be treated equally.  Lawson told

Plaintiff if she did not like it, she could quit.

20. In or around July 2016, Plaintiff was scheduled to work with Defendant Alvarez in the drive-thru during a McDonald's corporate inspection. Plaintiff complained to Lawson about this and was sent home without pay. Lawson stated that Plaintiff was being a "sour apple" and was "going to ruin the [corporate] inspection."

21. In addition, Plaintiff was harassed due to her race while employed with Defendant DETT. For instance, Plaintiff was repeatedly asked during her employment to provide her "papers" to Defendant DETT because they believed she was an undocumented immigrant. However, Plaintiff is a U.S. Citizen who was born in New Mexico, and provided Defendant DETT with documentation of the same.

22. Regardless, Plaintiff was subjected to comments regarding Defendant DETT's belief she was from Mexico and not in the United States legally. For instance, after Plaintiff's complaint to Gentry on or about June 29, 2016, and her refusal to work with Defendant Alvarez, Manager Hoonso Kim told Plaintiff she should be "put in a box and shipped back to Mexico" due to the unrest Plaintiff's complaints had allegedly caused.

23. Due to Defendants' continued harassment and retaliation, Plaintiff submitted a complaint to the EEOC on or about July 13, 2016, which is currently pending. Thereafter, Plaintiff notified Gentry and Lawson of her complaint to the EEOC.

24. On or about July 26, 2016, Plaintiff broke her foot at home. Plaintiff notified Lawson of the injury and that she had a doctor's note to be off work until on or about July 30, 2016. Lawson told Plaintiff that she must report to her scheduled shifts regardless without notifying Plaintiff of her right to take medical leave under the Family Medical Leave Act.

25. Plaintiff sought medical treatment and was released to work in a boot. Upon

reporting for her shift on or about July 29, 2016, Lawson told Plaintiff that she could not work with a boot because she could not wear non-slip shoes. However, employees were not required to wear non-slip shoes in all areas, thus, there were job assignments which Plaintiff could perform wearing a boot. Such act was another form of retaliation.

26. On or about August 5, 2016, Plaintiff met with Gentry to discuss her return to work. Plaintiff asked whether there were any accommodations that could be made so she could return to work with her boot, and Gentry said there were not. Plaintiff also asked if she needed to fill out FMLA paperwork to protect her job, and Gentry referred her to Lawson.

27. In addition, Plaintiff told Gentry that her VPO against Defendant Alvarez had been granted by a judge, and that she told the EEOC of this (and the fact that she was not permitted to work at the time). Gentry asked Plaintiff why she wanted to work there. Plaintiff told Gentry she needed a job, that she had rights as an employee, that Defendant Alvarez had treated others this way in the past, and that Defendant DETT did not stop Alvarez from continuing this behavior.

28. Immediately after her discussion with Gentry, Plaintiff spoke with Lawson, who continued to say that Plaintiff could not work with a boot on her foot. Plaintiff asked for FMLA paperwork. Plaintiff told Lawson that her hours were reduced and she wanted to fill out FMLA paperwork to protect her job. Lawson told Plaintiff her hours were reduced due to Plaintiff not reporting for work the prior week. Plaintiff reminded Lawson that she had provided doctor's notes for such shifts before the shifts began. At that point, Lawson became angry, yelling at Plaintiff that she did not have time to talk to her. Plaintiff notified Lawson of the VPO and her further reports to the EEOC, then left the building.

29. Plaintiff was not permitted to return to work thereafter. Thus, Plaintiff was discharged.

30.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

### COUNT I - Race - 42 U.S.C. §1981

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

31.     This Count goes against Defendant DETT, Inc.

32.     The acts described above constitute discrimination based on race and national origin and creation of a hostile work environment, and retaliation in violation of 42 U.S.C. § 1981, as amended.

33.     Plaintiff is entitled to relief because she is Hispanic, was qualified for her position, was terminated, and her position was not eliminated.

34.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

35.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II - FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

36.     This Count goes against Defendant DETT, Inc.

37.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

38. Plaintiff was entitled to medical leave because she worked for Defendant DETT, Inc., an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

39. Plaintiff suffered from a serious health condition (i.e., broken foot) requiring continued medical treatment by a health care provider.

40. Defendant DETT, Inc. interfered with Plaintiff's rights under the FMLA, including but not limited to failing to notify Plaintiff of her rights under the FMLA and by terminating her while she was on FMLA-qualifying leave.

41. Defendant DETT, Inc. also retaliated against Plaintiff for her attempted use of FMLA leave by terminating Plaintiff in close temporal proximity of her attempt to exercise her FMLA rights. Defendant DETT, Inc.'s actions were taken in response to Plaintiff's exercise of rights under the FMLA.

42. As set forth herein, Defendant DETT, Inc.'s actions were in willful violation of the law. Defendant DETT, Inc. was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

43. As a direct and proximate result of Defendant DETT, Inc.'s actions, Plaintiff has suffered injuries and is entitled to recover of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant DETT, Inc.'s violation of the FMLA, attorneys' fees and costs.

### COUNT III- Negligence

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44. This Count goes against Defendant DETT, Inc.

45. The acts described above constitute the tort of negligent training, retention, and supervision.

46. Defendant DETT, Inc. had a duty to properly supervise and train its employees to refrain from engaging in unlawful acts, including but not limited to the Defendant Alvarez's harassment, assault, and battery of Plaintiff and the creation of a hostile work environment, and discrimination and retaliation.

47. Defendant DETT, Inc. breached its duty.

48. At the critical time of the tortious incidents described herein, Defendant DETT, Inc. knew or should have known its employees, including but not limited to Defendant Alvarez, would create an undue risk of harm to others.

49. As a direct and proximate cause of Defendant DETT, Inc.'s negligence, Plaintiff was harmed.

50. As damages, Plaintiff is entitled to all damages allowed by state law.

## COUNT IV - ASSAULT AND BATTERY

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

51. This Count goes against Defendant Alvarez.

52. The acts described above constitute the tort of assault and battery.

53. Plaintiff is entitled to relief because Defendant Alvarez, without Plaintiff's consent, has acted with the intent of making a harmful and offensive contact with Plaintiff, and/or with the intent of making such contact with Plaintiff, and his action resulted in a harmful/offensive contact with Plaintiff.

54. As damages, Plaintiff is entitled to all damages allowed by state law.

## COUNT V - Intentional Infliction Emotional Distress

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

55. This Count goes only against both Defendants.

56. The acts as described above constitute the tort of intentional infliction of emotional distress.

57. Plaintiff is entitled to relief because Defendant Alvarez's conduct was intentional or reckless, his conduct was extreme and outrageous, his conduct caused Plaintiff to suffer emotional distress, and Plaintiff's emotional distress was severe.

58. As damages, Plaintiff is entitled to all damages permitted by state law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendants and award compensatory damages, punitive damages, liquidated damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 20th day of June, 2017.

    s/ Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**SHANNON C. HAUPT, OBA # 18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**johnston@leonardlaw.net**
**haupts@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**